## Cavin v. Commonwealth.

June 23, 1939.

J. J. Tye, Judge.

344

C. B. Upton for appellant.

Hubert Meredith, Attorney General, and J. M. Campbell, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On September 22, 1938, the grand jury of Whitley County returned an indictment against appellant, Garfield Cavin, accusing him of the offense of false swearing. One month and two days thereafter he was tried upon that charge and convicted, receiving a punishment of one year's confinement in the penitentiary. His motion for a new trial was overruled and from the verdict and judgment pronounced upon it he prosecutes this appeal, urging through his counsel only two grounds for a reversal, which are: (1) Insufficiency of the evidence to support the conviction, and (2) erroneous instructions. No complaint is made as to the sufficiency of the indictment, nor against any evidence introduced by the commonwealth, or rejection of any offered by defendant. So that, the only two questions raised by the appeal are the ones stated.

Defendant at the time of giving the alleged false testimony—with which he is charged in the instant indictment—was being tried for possessing moonshine liquor in a local option territory. Prior to the preferring of that offense he was arrested upon some other charge not disclosed by the record. The officer so arresting him on that occasion found concealed in one of his socks a half-pint of moonshine liquor, which the officer then and there exhibited to defendant and later turned it over to the county attorney of Whitley county. Defendant was then indicted for possessing the liquor, and upon his trial thereunder he gave the false testimony with which he is accused in the instant indictment.

At that trial he testified that the half-pint bottle found by the sheriff—and which defendant was carrying in one of his socks—was a prescription which a doctor in the state of Oklahoma had given him about a year beforehand, or rather suggested to him as being a remedy for gonorrhea. He stated that he was in Oklahoma on that occasion about thirty days but he could not and did not tell what time of the year it was, or when he arrived there, nor when he left there, or what was his business while there. Neither did he say that the doctor, whose name he did not know, wrote out any prescription for him, or whether he verbally suggested to defendant the requisite compounding of the remedy which defendant said consisted of alcoholic liquor about 80%, a quantity of sugar of lead, and the rest water, and that it was applied by injection. He had not used any of it for quite a while prior to the day he was arrested when the officer found the package in his possession. But, coincidentally, as it seems, he concluded on that morning to resume the use of his remedy, which he had so long neglected, and in leaving home to go to the place of his business— as an assistant around a tourist camp—he concluded to take his prescription along with him and resume the use of it during the day some time when he found time. On departing from home he took it from a wardrobe in which he said he was hiding it from his wife, but in which compartment he also had moonshine liquor in similar sized bottles. Having left home at something like five o'clock—the closet being more or less dark— he made a mistake and procured not his prescription, but one of his half-pint bottles of liquor, and it was the latter that the sheriff found upon him at the time of his arrest by that officer. However, he never discovered (?) his mistake in procuring the package when he left home until after he had testified upon his trial for possessing the liquor. Therefore, when he testified at the trial he did not then know about his mistake, although it occurred quite a while prior thereto, and after he had seen the bottle taken from his person by the sheriff, and during which time he was on bond and not in prison.

Laboring under that mistaken impression, his counsel insists that his testimony in denying that he possessed the liquor was not feloniously and wilfully given; and not being so it was the duty of the court to direct his acquittal. That position would undoubtedly be true, and most certainly acceptable to us, were it not over-

whelmingly disproven by the testimony in the case, including that of defendant himself. The sheriff testified that the package taken from defendant was moonshine liquor. The preserved bottle was passed around to the jury at the time of the defendant's trial for unlawfully possessing liquor, and they at least tested the contents of the bottle by smelling it. However, the defendant himself substantially admitted that it was liquor, though possessed by him at the time because of his mistake in procuring it from his closet instead of his prescription, which latter he himself had compounded.

On cross-examination by the Commonwealth, at the instant trial, defendant was asked and answered these questions:

"Did you have medicine in the bottle that you claim you thought you were getting? Did you have medicine in the bottle? A. Yes sir.

"Q. Where is it? A. At home I guess.

"Q. Have you seen it since? A. No sir.

"Q. Look for it? A. I haven't. * * *

"Q. About how often did you use this medicine? A. About every three or four days.

"Q. When did you use it? A. Started with it the morning before the officer came up there.

"Q. How long before that time had you been using it? A. Been long time.

"Q. You had been back 8 or 9 months from Oklahoma? A. Yes sir.

"Q. Where did you get this last bottle? A. I got the prescription from the doctor in Oklahoma.

"Q. Before you left Oklahoma? A. Yes sir.

"Q. You prepare this last bottle yourself? A. Yes, sir."

We have stated, supra, that counsel's insistence that the false oath with which his client is charged was not shown by the testimony to have been wilfully committed, was overwhelmingly disproven "even by the defendant himself." The excerpts we have taken from his testimony—with our general statements of other portions thereof—abundantly establish the accuracy of that statement in its entirety. The story given by him is utterly

unbelievable and not in accord with human conduct in similar circumstances. To begin with, the alleged prescription was obtained nearly a year beforehand from an unknown physician in a foreign state, while defendant was temporarily located in or visiting there. No written prescription was issued and the preparation—after being compounded by defendant himself—was scarcely used or applied at all, and the alleged compound consisted of as much as or more than 80% of pure alcohol, an ingredient which it would appear to a layman as being not only painful but possibly disastrous to so apply. The weird tale about making the mistake in getting the unadulterated liquor instead of the prescription when defendant left his home on the morning of his arrest by the officer, is too fallacious to be considered for a moment. The faulty recollection of defendant as to when he made his trip to Oklahoma the summer before, or as to how long he remained there, or when he left, possesses similar incredibility. Furthermore, he was free and at large for thirty-two days from the time the package was found upon him until he gave his false testimony, during which he could have discovered his mistake and presented it to the jury at his trial under the unlawful possession charge; and lastly, at the time he testified in the instant case he could have presented (but did not) his bottled prescription as fortifying the rest of his testimony, which stood sadly in need of fortification. It would thus appear that defendant in giving his testimony at the instant trial added to the list of charges, with one of which he was then lassoed.

In the cases of Anderson v. Commonwealth, 203 Ky. 681, 262 S. W. 1105, and Shepherd v. Commonwealth, 240 Ky. 261, 42 S. W. (2d) 311—with others therein referred to—we held that defendant at the trial of his indictment accusing him of false swearing might, by testifying in his own behalf, supply any omissions of the Commonwealth's testimony necessary to establish his guilt. Appellant in this case established beyond question that the package found by the officer after arresting him was moonshine liquor and not a physician's prescription. The vagueness and incredible character of his testimony with reference to the prescription, and in other respects, strongly corroborated the wilfullness and falsity of the testimony for which he was indicted. It is, therefore, manifest that counsel's contentions that the testimony authorized a peremptory instruction of ac-

quittal, and that the conviction was not supported by the testimony, are each totally unfounded.

The criticism of the instructions of the court are, first, that none of them should have been given because the case should not have been submitted to the jury at all, but which we have found to be without support. The other argument directed against the instructions is a criticism of instruction II which said: "You can not convict the defendant except on the testimony of at least two witnesses, or on the testimony of one witness and strong corroborating testimony." It was given pursuant to an established requirement in the trial of all offenses wherein the accused is charged with making false statements under oath, whether the charge be perjury or the statutory offense of false swearing. However, if we understand counsel's argument, he is complaining because instruction II, instead of being phrased as the court gave it, should have been submitted in substance like this: "Unless the defendant has been proven guilty by the testimony of at least two witnesses, or by one with other strong corroborating circumstances," etc. He cites no authority for such contention—most probably because no court had ever so held. The instruction as given told the jury in plain and understandable language that the defendant could not be convicted unless the falsity of his testimony, forming the basis for the charge in the indictment, was proven by two witnesses or by one witness and strong corroborating circumstances, and the instruction as insisted upon submitted to the jury the same issue by telling it that unless the quantum of proof required was furnished in the same manner, the requirement itself being confined to "the falsity of the charge involved." See the Shepherd case, supra, and Smith v. Commonwealth, 140 Ky. 568, 131 S. W. 493.

Upon the whole, the case is one where the guilt of the accused was established according to all rules prescribed by the criminal law, including the one especially applicable to the giving of false testimony, whether common law perjury or statutory false swearing.

Wherefore, the judgment is affirmed.